1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

11    ROXANNE ROJAS,                    )        NO. EDCV 14-1740 AGR
                                        )
12              Plaintiff,              )
                                        )
13         v.                           )
                                        )
14    CAROLYN W. COLVIN,                )        MEMORANDUM OPINION AND
      Commissioner of Social Security,  )        ORDER
15                                      )
                                        )
16              Defendant.              )
                                        )
17    _____)

18         Plaintiff Roxanne Rojas filed this action on September 2, 2014.   Pursuant to

19    28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.

20    (Dkt. Nos. 9, 10.)  On March 5, 2015, the parties filed a Joint Stipulation ("JS") that

21    addressed the disputed issues.  The court has taken the matter under submission

22    without oral argument.

23         Having reviewed the entire file, the court reverses the decision of the

24    Commissioner and remands for reconsideration of Dr. Richards' opinion for the

25    period beginning October 19, 2011.

26
27
28

I.

**PROCEDURAL BACKGROUND**

On July 14, 2011, Rojas filed applications for disability insurance benefits and supplemental security income, alleging an onset date of June 23, 2010. Administrative Record ("AR") 9, 159-73.  The applications were denied initially and on reconsideration.  AR 9, 75-76, 97-100.  Rojas requested a hearing before an Administrative Law Judge ("ALJ").  AR 116-18.  On January 30, 2013, the ALJ conducted a hearing at which Rojas and a vocational expert testified.  AR 26-56.  On February 14, 2013, the ALJ issued a decision denying benefits.  AR 9-21.  On July 25, 2014, the Appeals Council denied the request for review.  AR 1-3.  This action followed.

II.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.**

**DISCUSSION**

**A.     Disability**

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

**B.     The ALJ's Findings**

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Rojas has the severe impairments of degenerative disc disease in the lumbosacral spine, orthostatic hypotension, history of myocardial infarct status post triple bypass, chronic congestive heart failure, coronary arteriosclerosis, diabetes mellitus, diabetic autonomic neuropathy, hypertension, and obesity.  AR 11.  Rojas has the residual functional capacity to perform sedentary work, except she can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; should avoid working around heavy machinery or unprotected heights; should avoid concentrated exposure to temperature extremes of hot and cold; and requires the use of a cane for ambulation if walking away from the workstation.  AR 13.  Rojas is capable of performing past relevant work as a receptionist and customer complaint clerk.  AR 20.

_____

[1]   The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

1

2     ### C.   Treating Physicians

3     Rojas contends the ALJ erred in evaluating the opinions of Dr. Fitzmorris and

Dr. Richards, her treating physicians.

4     An opinion of a treating physician is given more weight than the opinion of

5     non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject

6     an uncontradicted opinion of a medically acceptable treating source, an ALJ must

7     state clear and convincing reasons that are supported by substantial evidence.

8     *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When a treating

9     physician's opinion is contradicted by another doctor, "the ALJ may not reject this

10    opinion without providing specific and legitimate reasons supported by substantial

11    evidence in the record.  This can be done by setting out a detailed and thorough

12    summary of the facts and conflicting clinical evidence, stating his interpretation

13    thereof, and making findings."  *Orn*, 495 F.3d at 632 (citations and quotation marks

14    omitted).  "When there is conflicting medical evidence, the Secretary must determine

15    credibility and resolve the conflict."  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th

16    Cir. 2002).

17    ### 1.   Dr. Fitzmorris

18    The record contains a one-page memorandum on Arrowhead Regional

19    Medical Center letterhead dated January 28, 2013 and signed by Dr. Fitzmorris, a

20    cardiologist.  AR 417.  In its entirety, the memorandum reads:

21          Mrs. Rojas has severe exercise limitation due to her coronary

22          artery disease. She is unable to walk on the treadmill for more

23          than a minute at a time.  She has perfusion abnormalities even

24          after bypass surgery and is completely disabled because of her

25          heart disease.

26    *Id.*

27    A treating physician's opinion as to the ultimate determination of disability is

28    not binding on an ALJ.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); 20

4

1   C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or

2   'unable to work' does not mean that we will determine that you are disabled.").  The

3   existence of disability "is an administrative determination of how an impairment, in

4   relation to education, age, technological, economic, and social factors, affects ability

5   to engage in gainful activity" and is reserved to the Commissioner.  *McLeod*, 640

6   F.3d at 885.

7          The ALJ gave Dr. Fitzmorris' opinion "no weight" because it was conclusory

8   and inadequately supported by clinical findings, and was inconsistent with the

9   objective medical evidence as a whole.  AR 19.

10         The ALJ correctly found that Dr. Fitzmorris did not cite clinical testing or

11   findings to support his opinion.  AR 417.  An ALJ may reject a treating physician's

12   opinion that is conclusory and inadequately supported by clinical findings.  *Bray v.*

13   *Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r*, 359 F.3d 1190,

14   1195 (9th Cir. 2004).  The treatment notes from Arrowhead Regional Medical Center

15   Cardiac Clinic do not support Dr. Fitzmorris' opinion.  AR 246-332, 398-416.  As the

16   ALJ noted, the treatment notes indicate Rojas' hypertension was stable and diabetes

17   was under fair control in September 2010.  AR 16, 286, 288.  Rojas reported fatigue

18   and numbness/tingling, but had good exercise tolerance and no chest pressure or

19   shortness of breath.  The physical examination findings were unremarkable. AR 16,

20   286, 288.  In October 2010, Rojas reported residual parasthesia, without syncope,

21   and indicated she walks 30 minutes.  AR 16, 284.  In November 2010, an

22   echocardiogram included an ejection fraction of 36.7 percent, normal mitral valve

23   function, normal tricuspid valve function, moderately decreased left ventricular

24   ejection fraction, dyskinetic apical wall, akinetic septal wall, and diastolic dysfunction.

25   AR 16, 281-82.  In December 2010, Rojas was doing "generally well" and had

26   returned to work after bypass surgery.  AR 16, 276.  She could walk approximately

27   30 minutes without excessive fatigue or symptoms, had no chest pain, orthopnea, or

28   paroxysmal nocturnal dyspnea.  AR 16, 276.  In June 2011, Rojas reported she was

1   doing well, with occasional lightheadedness and fatigue.  AR 17, 249.  She could

2   walk approximately one mile a day, and denied chest pain or shortness of breath.

3   AR 17, 250.  In March 2011, x-rays of the lumbar spine indicated degenerative facet

4   hypertrophy and sclerosis, with no acute fracture or subluxation of the lumbar spine,

5   and minimal anterior subluxation of the coccyx.  AR 17, 255.  In July 2011, an

6   echocardiogram included an ejection fraction of 45 percent, mild left ventricular

7   hypertrophy, mildly decreased left ventricular ejection fraction, apical dyskinesis and

8   LV distal inferoseptal akinesis and thinning, mildly dilated left ventricle, and diastolic

9   dysfunction. AR 17, 246-47.  The ALJ could reasonably conclude that Dr. Fitzmorris'

10  opinion was conclusory and inadequately supported by clinical findings.[2]

11          The ALJ could reasonably conclude that Dr. Fitzmorris' opinion was

12  inconsistent with the medical evidence as a whole.  AR 19.  Rojas was admitted to

13  Arrowhead Regional Medical Center on June 23, 2010 for five days for shortness of

14  breath and dry cough.  AR 16, 299.  Catheterization by Dr. Fitzmorris revealed

15  triple-vessel coronary artery disease.  AR 16, 299, 329, 331.  On June 28, 2010,

16  Rojas was transferred to Loma Linda University Medical Center for coronary bypass

17  surgery.  AR 16, 299-300.  The Loma Linda treatment notes indicate that on July 29,

18  2010, Rojas had an abnormal echocardiogram, with possible left ventricle

19  enlargement, left ventricle hypertrophy, and ST and T wave abnormality.  AR 16,

20  240.  The July and August 2010 treatment records indicate findings of erythema to

21  the left leg, low blood sugar at times, and low blood pressure at times.  AR 16, 237,

22  242, 245.  The Arrowhead Westside Clinic treatment notes document Rojas'

23  treatment between November 2010 and October 2012.  AR 17, 338-49, 363-96.  In

24  November 2010, Rojas was doing well after the triple bypass surgery, with the most

25  recent echocardiogram showing improvement.  AR 17, 387.  Rojas reported she had

26  _____

27          [2]   Given the lack of supporting testing or findings, the ALJ could reasonably infer
    that Dr. Fitzmorris' opinion reflected Rojas' subjective complaints.  An ALJ may draw
28  reasonable inferences logically flowing from the record. *Sample v. Schweiker*, 694 F.2d
    639, 642 (9th Cir. 1982).

1    "tingling" all over her body, but had no chest pain and could walk long distances

2    without shortness of breath.  AR 17, 388.  At subsequent visits, Rojas continued to

3    deny chest pain, PND, and/or shortness of breath, with the exception of a December

4    2011 treatment record that indicates "possibly" shortness of breath.  AR 17, 338,

5    343, 372, 374.  In May 2012, Rojas reported to a consultative examiner that she

6    exercised 30 to 45 minutes a day, including walking, and did a little cooking,

7    cleaning, shopping, laundry, and occasional driving.[3]  AR 15, 350-51.  In June 2012,

8    treatment notes indicate Rojas denied chest pressure or shortness of breath.  AR 15,

9    372.

10         Rojas argues that the ALJ should have recontacted Dr. Fitzmorris for

11    clarification of his opinion and/or for additional evidence.  Rejection of a treating

12    physician's opinion does not by itself trigger a duty to contact the physician for further

13    explanation.  *McLeod*, 640 F.3d at 885.  The ALJ made no finding that the evidence

14    was ambiguous or that the record was inadequate to allow for proper evaluation.

15    *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to

16    develop the record further is triggered only when there is ambiguous evidence or

17    when the record is inadequate to allow for proper evaluation of the evidence.").

18    Therefore, the ALJ did not have a duty to recontact Dr. Fitzmorris.

19         The ALJ articulated specific and legitimate reasons, supported by substantial

20    evidence in the record, for rejecting Dr. Fitzmorris' opinion.  The ALJ did not err.

21            **2.   Dr. Richards**

22         Dr. Richards, Plaintiff's primary care physician, prepared a Medical Opinion

23    Re: Ability To Do Work-Related Activities (Physical) form dated August 23, 2012.  AR

24    359-61.

25         Dr. Richards indicated Rojas could lift and carry less than ten pounds

26    occasionally and frequently, could stand and walk less than two hours in an eight-

27

28          [3] At the hearing, Rojas did not recall reporting such information to the consultative examiner.  AR 15, 48-50.

1    hour day, and could sit for an unlimited amount of time.  AR 359.  Rojas would

2    sometimes need to lie down at unpredictable intervals during a work shift.  In support

3    of these limitations, Dr. Richards cited "orthostatic hypotension: blood pressure falls

4    when patient stands/walks."  AR 360.

5        Dr. Richards further indicated that Rojas could frequently twist, and never

6    stoop, crouch, or climb stairs or ladders.  Rojas was not precluded from handling or

7    fingering.  In support of these limitations, Dr. Richards stated that Rojas "has poor

8    sense of feel in legs/feet" and "cannot do any sort of heavy or aerobic work."  *Id.*

9    She described her findings in support of Rojas' reaching, feeling, and pushing/pulling

10   limitations as peripheral neuropathy and severe shortness of breath with muscle

11   activity.  *Id.*

12       Dr. Richards indicated that Rojas should avoid all exposure to extreme heat

13   and hazards such as machinery and heights, avoid moderate exposure to extreme

14   cold, and avoid concentrated exposure to fumes, odors, dusts, gases, and poor

15   ventilation.  AR 361.  She described her findings in support of the environmental

16   restrictions as: "Extremes of temperature may cause blood pressure to fall and cause

17   fainting.  Irritation of airway will cause increased shortness of breath."  *Id.*

18       Dr. Richards opined that Rojas would be absent from work about once a

19   month due to her impairments or treatment.  *Id.*

20       The ALJ gave "no weight" to Dr. Richards' opinion, finding it inadequately

21   supported by clinical findings.  AR 19-20.  The ALJ may properly discount a treating

22   physician's opinion that is not supported by treatment records.  *See Bayliss*, 427

23   F.3d at 1216; *Thomas*, 278 F.3d at 957.

24       The ALJ noted that Dr. Richards assessed functional limitations that would

25   preclude Rojas from working at a level of substantial gainful activity.  The ALJ found

26   that opinion to be inconsistent with Dr. Richards' own treatment records that show

27   "relatively minimal positive objective clinical and diagnostic findings."  AR 20.  The

28   record contains Dr. Richards' treatment records from Arrowhead Westside Clinic

8

1   between November 2010 through October 2012.  AR 17, 338-49, 363-96.  As noted

2   above, Rojas was noted to be doing well after triple bypass surgery and denied chest

3   pain, PND or shortness of breath, with the exception of a December 2011 treatment

4   record that indicates "possibly" shortness of breath.  AR 17, 338, 343, 372, 374, 387.

5   On subsequent office visits, either no neurological findings were documented or

6   Rojas was generally noted to be neurologically within normal limits.  AR 17, 341,

7   345, 347, 349, 372, 374, 390, 392, 394.

8          However, in May 2011, Rojas reported that she fell and hit her head several

9   weeks prior and had dizziness that was getting better.  She reported feeling fatigue.

10  AR 17, 394.  In October 2011, Dr. Richards noted (1) a positive stress test with

11  ejection fraction of 48% with stress and 55% at rest; (2) orthostatic dizziness

12  exacerbated by heat and eating, probably secondary to autonomic neuropathy, and

13  significant peripheral neuropathy (for which Rojas was prescribed medication[4] and

14  Jobst stockings; and (3) diabetic peripheral neuropathy and difficulty with "position

15  sense" and closing eyes in the shower.  AR 17, 338.  The ALJ noted that Rojas'

16  standing and sitting blood pressure was consistent with orthostatic hypotension.  AR

17  17, 338-39, 349, 390, 394.  In December 2011, Rojas felt tired with minimal activity

18  and complained that she had been turned down by SSI.  AR 343.  In February 2012,

19  Rojas continued to feel weak.  AR 345.  In March 2012, Rojas reported she was less

20  dizzy on the whole.  AR 17, 347.  Her orthostatic hypotension was less with

21  medication.  AR 346.  In April 2012, Rojas reported that she had spells of "sickness"

22  feeling weak and dizzy when up and walking about, which required lying down.  AR

23  17, 349.  She reported that the Jobst stockings worsened her symptoms.  AR 17,

24  349.  In August 2012, Rojas complained of dyspnea on exertion, easy fatigue,

25  dizziness, and light-headedness, worse in hot weather.  AR 17, 367.  Rojas went to

26  cardiac rehabilitation but "looked sick that day so was rescheduled."  AR 367.  Rojas

27

28          [4]  Dr. Richards noted that it was unclear if the medication would be helpful
    "cardiac wise."  AR 339.  Ultimately, that medication was not used.  AR 342.

9

felt the room was spinning; meclizine "perhaps helps a bit." AR 17, 367.  In October 2012, Rojas reported difficulty going shopping or walking in the neighborhood due to getting light-headed.  Dr. Richards requested authorization for a walker with a seat at Rojas' request.  AR 17, 20, 365, 425-26.  The ALJ noted that "there were no significant positive objective findings" from the October 2012 appointment when Rojas requested a walker with a seat.  AR 20.

It is the ALJ's province to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  However, the ALJ's conclusion that Dr. Richards' records reflect minimal positive objective findings is not supported by substantial evidence for the period beginning October 19, 2011.

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for reconsideration of Dr. Richards' opinion for the period beginning October 19, 2011.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: May 6, 2015

ALICIA G. ROSENBERG
United States Magistrate Judge

10